## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **JENA CRAVER**, on behalf of herself and all others similarly situated,<br><br>*Plaintiff,*<br>v.<br><br>**HIGHWAY AUTOMOTIVE PROS, LLC, SING FOR SERVICE, LLC, MATRIX WARRANTY SOLUTIONS, INC., and MFS OF FLORIDA, INC.,**<br><br>*Defendants.* | Civil Case No.:<br><br>**COMPLAINT - CLASS ACTION** |

## <u>INTRODUCTION</u>

1.      This action arises out of the telemarketing practices of Defendants, Highway Automotive Pros, LLC ("HAP"), SING for Service, LLC d/b/a MEPCO ("SING"),  Matrix Warranty Solutions, Inc. ("MATRIX") and MFS of Florida, Inc. ("MFS") (collectively, "Defendants"), that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120.[1]

2.      HAP makes, or has made on its behalf, prerecorded calls advertising

---

[1] The amendment to the FTSA became effective on July 1, 2021.

1

MATRIX's extended auto warranty policies.

3.     HAP continues to make these calls even after it received multiple requests from the called party requesting that HAP stop.

4.     The TCPA prohibits prerecorded calls to a person who, like Ms. Craver, has previously asked not to receive such calls, and makes HAP, and the companies that engage their services, liable for calls made on their behalf in violation of the TCPA's internal do-not-call rules.

5.     Accordingly, Plaintiff brings this action on behalf of herself and classes of similarly situated individuals.

<u>**JURISDICTION AND VENUE**</u>

6.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

7.     This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because they are so closely related to the federal claims that they form a single case or controversy.

8.     This Court has jurisdiction over MFS because MFS is a Florida Corporation, conducts business transactions in this District and has committed tortious act in this District.

9.     The Court has jurisdiction over HAP, SING and MATRIX because they conduct business transactions in this District and have committed tortious acts in this

District.

10.     Venue is proper in this District because Defendants targeted a resident of this District and called into this District and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

11.     Plaintiff Jena Craver ("Ms. Craver") is, and at all times mentioned herein was, a citizen and resident of St. Petersburg, Florida.

12.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13.     Defendant, Highway Automotive Pros, LLC ("HAP"), is, and at all times mentioned herein was, a Wyoming limited liability company with headquarters at 2372 Morse Ave, Suite 930, Irvine, California, 92614.

14.     Defendant MFS of Florida, Inc. ("MFS") is, and at all times mentioned herein was, a Florida corporation with headquarters at 3100 McKinnon Street, Suite 440, Dallas, Texas 75201.

15.     Defendant, Matrix Warranty Solutions, Inc. ("MWS") is, and at all times mentioned herein was, a Nevada corporation with headquarters at 3100 McKinnon Street, Suite 420, Dallas, Texas 75201.

16.     Defendant, SING for Service, LLC d/b/a MEPCO ("SING") is, and at

3

all times mentioned herein was, a Delaware limited liability company with headquarters at 10 S LaSalle St., Suite 2310, Chicago, Illinois 60603.

17.     Defendants are, and at all times mentioned herein were, "persons" as defined by 47 U.S.C. § 153 (39).

## TCPA BACKGROUND

18.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

19.     Relevant here, the TCPA prohibits using a prerecorded message to contact cell phones, unless the recipient has provided and not revoked "consent" to received the call.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

20.     If the calls constitute telemarketing, the caller is required to obtain prior express written consent from the persons to whom they call.

21.     "Prior express written consent" is specifically defined by statute as:

[A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such

advertisements or telemarketing messages to be delivered.

47 C.F.R. §64.1200(f)(8).

22.    A violation of 47 U.S.C. § 227(b) carries statutory damages of $500 to $1,500 per call.  *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

23.    Ms. Craver is the user of a cellular telephone number ending in 0610.

24.    Like many Americans, Ms. Craver has received unsolicited telemarketing calls soliciting her to extend her car's warranty.

25.    Ms. Craver does not own a car and does not need to extend the warranty of a car she does not own.

26.    Ms. Craver has received at least twenty-two (22) calls from HAP attempting to sell her one of MATRIX's auto warranty policies.

27.    During certain of the calls, Ms. Craver requested not to be called again.

28.    When Ms. Craver would not answer the calls, HAP would leave a prerecorded message on Ms. Craver's voicemail.

29.    Ms. Craver knew these messages were prerecorded because some of the messages were identical, and sometimes the message would begin playing before her voicemail began recording, leaving only a partial message in her voicemail.

30.    These calls came from changing ten-digit numbers that were, upon information and belief, "spoofed."

31.     Ms. Craver received calls that resulted in a prerecorded message being left on her voicemail at the following dates and times from the following numbers:

- April 16, 2020 at 6:21PM from (951) 262-7173;

- May 19, 2020 at 7:58PM from (629) 204-3528;

- July 22, 2020 at 3:01PM from +7 (579) 512-90-2;

- October 12, 2020 at 1:05PM from (952) 900-8801;

- October 14, 2020 at 6:43PM from (952) 900-8801;

- December 29, 2020 at 5:06PM from (469) 214-8084;

- April 9, 2021 at 6:45PM from (915) 316-5580;

- May 11, 2021 at 11:25AM from (347) 849-8244;

- June 8, 2021 at 1:30PM from (717) 229-8356;

- June 24, 2021 at 1:50PM from (253) 366-5003;

- July 7, 2021 at 2:33 PM from (305) 317-5991;

- July 15, 2021 at 5:37PM from (318) 225-4028;

- July 29, 2021 at 1:32PM from (409) 235-2839;

- August 12, 2021 at 3:14PM from (475)-219-5153;

- August 23, 2021 at 6:17PM from (517) 201 5022;

- September 16, 2021 at 6:59PM from (719) 204-9246;

- September 28, 2021 at 1:09 PM from (828) 295-1765;

- October 6, 2021 at 6:35PM from (908) 388-4895;

- October 21, 2021 at 2:42PM from (980) 247-9814;

- November 1, 2021 at 11:36AM from (331) 239-0399;

- December 10, 2021 at 12:34PM from (201) 361-6248; and

- January 21, 2022 at 3:31PM from (225) 455-6133.

32.     Discovery will reveal the full extent of the calls placed to Ms. Craver that utilized an artificial or prerecorded message.

33.     Each message left of Ms. Craver's voicemail provided an "888" or "833" call back number.

34.     The call back numbers left on Ms. Craver's voicemail are associated with a litany of online consumer complaints that reference similar calls.[2]

35.     Ms. Craver never provided prior express written consent (or any consent) to Defendants for these telephone calls.

36.     In an attempt to identify the caller, Ms. Craver asked who was calling.

37.     The caller refused to provide the company name and would often provide a generic name, such as "dealer processing", a tactic to conceal the illegal nature of the calls.

---

[2] *See, e.g.*, https://800notes.com/Phone.aspx/1-888-965-2310 (last accessed April 5, 2022); https://800notes.com/Phone.aspx/1-888-965-2302 (last accessed April 5, 2022); https://800notes.com/Phone.aspx/1-888-721-2698 (last accessed April 5, 2022); https://800notes.com/Phone.aspx/1-888-721-2701 (last accessed April 5, 2021); https://www.callercenter.com/833-304-1447.html (last accessed April 5, 2021).

38.     In a further attempt to identify the caller, Ms. Craver's significant other called one of the "call back" numbers left on one of Ms. Craver's voicemail messages and purchased a policy.

39.     The policy makes clear that: (1) HAP is the seller of the extended warranty; (2) MATRIX is the policy administrator for whom HAP places illegal calls; (3) MFS is the obligor of the policy for automobile services; and (4) SING is the payment administrator, which derives revenue from HAP's illegal calls and works in concert with both HAP and MATRIX.

40.     Defendants MATRIX, MFS and SING authorized HAP to solicit and generate prospective customers, and enter into contracts on their behalf with those prospective customers.

41.     Accordingly, MATRIX, MFS and SING are vicariously liable for the unlawful calling practiced of HAP, their agent.

42.     Ms. Craver and the classes were damaged by the violations alleged herein.  Their privacy was improperly invaded, the prerecorded calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the unwanted prerecorded calls.  The prerecorded calls were annoying and a nuisance and wasted the time of Ms. Craver and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

8

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two categories of proposed "Classes," the "TCPA Class" and the "Florida Class" as defined as follows:

### THE TCPA CLASSES

All persons in the United States (1) called by or on behalf of Defendants (2) on their cellular telephone numbers (3) using the same or a similar recorded message used to call the Plaintiff (4) from four years prior to the date of filing of the complaint to trial.

### FLORIDA CLASS

All persons in Florida (1) called by or on behalf of Defendants (2) for the same or a similar purpose Plaintiff was called (3) using the same or a similar recorded messages used to call the Plaintiff (4) from July 1, 2021 to trial.

(The TCPA Class and the Florida Class are collectively referred to herein as the "Classes.")

44.     Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

45.     The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

46.     The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

a.  The time period(s) during which Defendants made their prerecorded calls;

b.  The telephone numbers to which Defendant made their prerecorded calls;

c.  The telephone numbers for which Defendant had prior express written consent;

d.  The purposes of such prerecorded calls; and

e.  The names and addresses of Class members.

47.     The Classes are comprised of hundreds, if not thousands, of individuals.

48.     There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

a.  Whether Defendants (or someone acting on their behalf) make calls that utilize an artificial or prerecorded voice message;

b.  Whether Defendants (or someone acting on their behalf) obtain prior express written consent;

c.  Whether Defendants' statutory violations were willful and knowing; and

      d.  Whether Defendants should be enjoined from engaging in such conduct in the future.

49.    Plaintiff is a member of the Classes in that Defendants placed an unsolicited call to her cellular telephone that utilized an artificial or prerecorded voice.

50.    Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

51.    Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

52.    Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

53.    Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

54.    Defendants have acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

55.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

56.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

57.     Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the TCPA Class)**

58.     Plaintiff and the proposed TCPA Class incorporate the allegations of paragraphs 1-57 as if fully set forth herein.

59.     Defendants placed, or had placed on their behalf, prerecorded telephone calls to Plaintiffs' and the TCPA Class Members' cellular telephones without prior express written consent.

60.     Defendants therefore violated 47 U.S.C. § 227(b).

61.     As a result of Defendants' unlawful conduct, Plaintiff and the TCPA Class Members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

62.     Plaintiff and the TCPA Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

### SECOND CAUSE OF ACTION
### Violation of the Florida Telephone Solicitation Act,
### Fla. Stat. § 501.059

63.     Plaintiff and the proposed Florida Class incorporate the allegations of paragraphs 1-57 as if fully set forth herein.

64.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

65.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

66.     Defendants failed to secure prior express written consent from Plaintiff and the Class Members.

67.    In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

68.    Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made from a system that played a recorded message when a connection was completed to a number called.

69.    As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500 in statutory damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing their counsel as Class Counsel;

B.    An order declaring that Defendants' actions, as set out above, violate the statutes referenced herein;

C.    An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

14

D.    An award of statutory damages;

E.    An award of treble damages; and

F.    Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** April 13, 2022                 *s/ Avi R. Kaufman*
                                          Avi R. Kaufman, Esquire (FL Bar No. 84382)
                                          KAUFMAN P.A.
                                          237 South Dixie Highway, 4th Floor
                                          Coral Gables, FL 33133
                                          Tel: (305) 469-5881
                                          kaufman@kaufmanpa.com